UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

**FILED** 00 MAY -9 AM 10: 35
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ANGELIA PRESSNELL, as mother and next friend of C.S., a minor, )<br>  )<br>Plaintiff, )<br>  )<br>vs. )<br>  )<br>LIMESTONE COUNTY BOARD OF EDUCATION, )<br>  )<br>Defendant. ) | Civil Action No. CV-99-S-2974-NE<br><br>**ENTERED**<br>MAY 9 2000 |

### MEMORANDUM OPINION

Plaintiff commenced this action on November 5, 1999, for the sole purpose of obtaining costs and attorney's fees as a prevailing party under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* This action is before the court on the parties' cross motions for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that defendant's motion for summary judgment is due to be granted, and plaintiff's motion denied.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.)  The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56 permits the movant to discharge this burden with or without supporting affidavits.  *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.  When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor.  *See Spence*

*v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

3

matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

When presented cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720. *See also, e.g.*, *Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986)(Richey, J.).

"[W]e relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 24 (1st Cir. 1997) (citing *Sanchez v. Alvarado*, 101 F.3d 223, 225 n.1 (1st Cir. 1996)).

## II. FACTUAL BACKGROUND

Plaintiff, Angelia Pressnell, is the mother and next friend of C.S., a seven-year old minor with multiple handicaps.[1] Plaintiff, acting through her attorney, requested a due process hearing from the Alabama Superintendent of Education on August 11, 1999, contending that the Limestone County Board of Education had denied her child a free and appropriate education in violation of the

---

[1] The minor is visually and intellectually impaired as the result of conditions such as cerebral palsy and diabetes insipidus.  *See* Plaintiff's complaint, exhibit B (copy of administrative decision) at 4.

4

Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (the "Act" or the "IDEA").[2]  Her attorney specified three issues requiring resolution by an appointed hearing officer:

1. Ms. Pressnell wants more P.T. [*i.e.*, physical therapy] and O.T. [*i.e.*, occupational therapy] services for her child.  Her child's doctors have recommended P.T. and O.T. two times per week.  That level of services is more appropriate than the present level of one session every two weeks.

2. Ms. Pressnell wants a full time aide for visits to a regular first grade class for socialization 3-5 times per week with appropriate consultation by an AIDB [Alabama Institute for Deaf and Blind] person for that aide once a month.

3. Lastly, Ms. Pressnell wants her daughter to be allowed to go on field trips in an air conditioned bus with an adult to go with her, just as her IEP [*i.e.*, individualized educational program] and federal regulations allow.[3]

The due process hearing was conducted on September 23, 1999, at the Limestone County Water Works Board in Athens, Alabama, by John W. Green, III, the appointed hearing officer.[4]  Both parties stipulated that C.S. was a disabled child within the meaning of the IDEA, and as such, was eligible for special education services.[5] The parties also engaged in the following discussion pertinent to

---

[2] *Id.* at 1; *see also* plaintiff's complaint, exhibit A.

[3] Plaintiff's complaint, exhibit A.

[4] Plaintiff's evidentiary submission (doc. no. 11) at 5.

[5] *Id.* at 16.

plaintiff's third issue:

| | |
|---|---|
| Mr. Lewis:[6] | I believe issue three has been resolved; is that correct, Mr. Leonard? |
| Mr. Leonard:[7] | I believe so. I have gotten no letter indicating that from you. And I would like to put that on the record. |
| | If the position of the board is that the parent prevails on this issue, I would like to have this stated, if not, I would like to have it be an issue. |
| Mr. Lewis: | I don't think I can go as far as to say the parent prevailed. I think it was a misunderstanding from the parties. At the mediation, we established that [the child] will go on field trips, and it will be an air-conditioned bus. |
| ... | |
| Mr. Leonard: | I don't know what it means to make ... issue three a nonissue, if there is not a capitulation by the school board, an agreement that we have prevailed in asking for this, you agree to grant this. |
| Mr. Lewis: | The point is, we never refused to do it. We have no problem— |
| Mr. Leonard: | Then it's an issue if you say you never refused to do it. |
| The Hearing Officer: | Let me put it this way: It's not an issue in terms of the fact that they are agreeing to do it from now on. I guess for purposes to what extent you |

---

[6] Mr. Lewis is counsel for defendant.

[7] Mr. Leonard is counsel for plaintiff.

|                      |                                                                                                                              |
|----------------------|------------------------------------------------------------------------------------------------------------------------------|
|                      | may be the prevailing party, it remains an issue. It's an issue as to whether or not they ever refused to do it.             |
| Mr. Leonard:         | Yeah.                                                                                                                        |
| The Hearing Officer: | From now on, they agree they will do it.                                                                                     |
| Mr. Leonard:         | We will say that that preserves it as an issue. The[y are] saying it's never happened; we say [it] has happened repeatedly. |
| The Hearing Officer: | Okay.  We'll take testimony on that.[8]                                                                                      |

Plaintiff subsequently testified regarding the field trips her daughter had missed, because an adult was not designated to accompany the child and the bus was not air conditioned.[9]

The hearing officer rendered a written decision on October 6, 1999.[10] It is undisputed that he resolved issues one and two in favor of the Limestone County Board of Education.[11] The only issue before this court is whether plaintiff was a "prevailing party" with regard to the third issue.[12] That portion of the hearing officer's decision addressing the issue is set forth below.

With regard to the issue designated number 3 by Petitioner,

---

[8] *Id.* at 12-16.
[9] *Id.* at 43-77.
[10] Plaintiff's complaint, exhibit B.
[11] *Id.*
[12] Plaintiff's complaint ¶ 8.

7

<u>the undersigned hearing officer treats the statements on the record as a stipulation that the ... [defendant] has agreed to provide precisely what is requested therein by Petitioner and that the issue is moot except for Petitioner's desire to demonstrate that their past failures in this regard rise to the level of a violation of legal requirements applicable here</u>. Apparently, the Child missed between two (2) and four (4) of five (5) field trips last year, depending on definition and one's interpretation of the testimony. Although there may have been other reasons, the reason about which the appropriateness of the Child's exclusion is most disputed has to do with Petitioner's contention that the Parent (mother) was pressured or required to attend field trips with her daughter. Once again, there is some ambiguity here, this time in several regards. For one thing, the Respondent's attorney's position that this is really an equal access or discrimination issue pursuant to Section 504 of the Rehabilitation Act of 1973 may be well-taken. It is unclear whether this argument fails because these field trips are intended to be a related service or a part of the Child's educational program by virtue of inclusion in the IEP. The confusion, at least so far as the undersigned is concerned, has to do with the fact that the field trip participation is not included in any specific category in the IEP but appears only on the last page under the heading of "Additional Information." There is also ambiguity with regard to who is responsible for providing the "other adult" who might go in place of the Parent. <u>In any event, since the issue has apparently been resolved, the past failures are deemed either not adequately significant or clearly violative of the IDEA itself such as to require a specific remedy, whether compensatory education or otherwise. However, it appears that there is at least a *prima facie* failure to comply with the actual language of the IEP by the LEA [local education agency] here as to the last school year</u>.

The aspect of the last issue with regard to the air-conditioning of the bus is also confusing in that the testimony about the temporary failure or inadequacy about the air-condition on the subject bus in the late summer of 1998 had to do with daily transportation to school and not with fieldtrips. In that regard, the failure was possibly

8

> justified in that it was temporary and in that last summer was extraordinarily hot. Additionally, the LEA has made it clear that it will reimburse the Mother for substitute transportation if a proper application is filed for same. It is also assumed that the LEA is now on notice of the problem and would be expected to do a better job in the late summer of 1999 with regard to the same issue.[13]

At the end of his decision, the hearing officer concluded that "[t]he LEA must make whatever provisions are necessary to see that the Child is allowed to participate in field trips, at least so long as same is included as a part of her IEP."[14]

After the issuance of the hearing officer's decision, counsel for plaintiff requested defendant reimburse him in the amount of $2,745.00, a figure representing one-third of the total attorney's fees expended.[15] The court, therefore, must decide as a matter of law whether plaintiff was a prevailing party with regard to the third issue, and thus is entitled to recover the requested fees. In reaching this decision, the court notes that neither party challenges the propriety of the hearing officer's conclusions.

### III. DISCUSSION

The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free and appropriate public education...." 20 U.S.C. § 1400(d)(1)(A). Pursuant to the

---

[13] *Id.* at 6-8 (emphasis supplied).
[14] *Id.* at 11.
[15] Plaintiff's complaint, exhibit C.

Act, Congress provides federal funds to assist state and local educational agencies in schooling disabled persons, but conditions receipt of that funding upon a state's compliance with the Act's substantive and procedural goals.

> States seeking to qualify for federal funds must develop policies assuring all disabled children the "right to a free appropriate public education," and must file with the Secretary of Education formal plans mapping out in detail the programs, procedures, and timetables under which they will effectuate these policies. ... Such plans must assure that, "to the maximum extent appropriate," States will "mainstream" disabled children, *i.e.*, that they will educate them with children who are not disabled, and that they will segregate or otherwise remove such children from the regular classroom setting "only when the nature of the handicap is such that education in regular classes ... cannot be achieved satisfactorily." ...

*Honig v. Doe*, 484 U.S. 305, 310-311, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988) (citations omitted).

The keystone of the IDEA is the development of an individualized educational program ("IEP") for each disabled child. *See* 20 U.S.C. § 1414(d).

> Prepared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child, the IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives. ... The IEP must be reviewed and, where necessary, revised at least once a year in order to ensure that local agencies tailor the

>  statutorily required "free appropriate public education to each child's unique needs. ...

*Honig*, 484 U.S. at 311, 108 S.Ct. at 597-98 (citation omitted).

The Act also affords parents or guardians of a disabled child an opportunity to challenge certain aspects of the child's IEP at "an impartial due process hearing ... conducted by the State educational agency or by the local educational agency...." 20 U.S.C. § 1415(f). Should any party desire to appeal a decision made at the initial hearing, they "may seek further administrative review, and, where that proves unsatisfactory, may file a civil action in any state or federal court." *Honig*, 484 U.S. at 312, 108 S.Ct. at 598. The Act was amended by Congress in 1986, to permit the recovery of attorneys' fees incurred in such hearings. *See* Handicapped Children's Protection Act of 1986, Pub. L. 99-372, 100 Stat. 796. The Act now provides that "the court, in its discretion, may award reasonable attorneys' fees ... to the parents of a child with a disability who is the <u>prevailing party</u>." 20 U.S.C. § 1415(i)(3)(B) (emphasis supplied). Moreover, the amended Act specified "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

Most courts have accorded the phrase, "prevailing party," as

used in IDEA § 1415(i)(3)(B), the same definitional gloss layered upon the identical words in cases arising under 42 U.S.C. § 1988(b).[16]  See *Kathleen H. v. Massachusetts Department of Education*, 154 F.3d 8, 14 (1st Cir. 1998); *Board of Education of Downers Grove Grade School District No. 58 v. Steven L.*, 89 F.3d 464, 468 (7th Cir. 1996); *Borengasser v. Arkansas State Board of Education*, 996 F.2d 196, 199 (8th Cir. 1993); *Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 809 n.9 (2d Cir. 1990); *Tice By and Through Tice v. Botetourt County School Board*, 908 F.2d 1200, 1205 n.4 (4th Cir. 1990); *Angela L. v. Pasadena Independent School District*, 918 F.2d 1188, 1193 (5th Cir. 1990).

The Supreme Court defined the phrase, "prevailing party," in a case arising under 42 U.S.C. § 1988(b) as meaning a party who "'succeed[s] on any significant issue in litigation which achieves some of the benefit the [party] sought in bringing suit.'" *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (internal quotation omitted)). In order to qualify as a prevailing party, "'plaintiff must be able to

---

[16] 42 U.S.C. § 1988 pertains to civil actions filed to vindicate civil rights, and sub-section (b) provides that "the court, in its discretion, may allow <u>the prevailing party</u> ... a reasonable attorney's fee as part of the costs" (emphasis supplied).

12

point to a resolution of the dispute which changes the legal relationship between [her]self and the defendant.'" *Farrar*, 506 U.S. at 111, 113 S.Ct. at 573 (quoting *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989)). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n*, 489 U.S. 792-93, 109 S.Ct. at 1494.

> Therefore, <u>to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim</u>. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, ... or comparable relief through a consent decree or settlement.... Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.

*Farrar*, 506 U.S. at 111, 113 S.Ct. at 573 (emphasis supplied).

Defendant asserts two arguments in support of its position that plaintiff was not a prevailing party with regard to the third issue. First, defendant contends there was no genuine dispute between the parties on the date of the due process hearing.

> It is undisputed, that prior to implementation of the 1998-1999 IEP, the Board had agreed to allow the student to attend field trips and ride in an air-conditioned bus. ... Thus, the school [board] at no time opposed or rejected Presnell's request as to [the] demands contained in Issue

>    Three.  Thus, a due process hearing was not necessary on this issue in 1998 or on August 11, 1999.[17]

Although neither party has provided the court with a copy of the child's IEP, the testimony elicited during the due process hearing clarified the substance of defendant's arguments. On August 11, 1999, the date on which plaintiff requested a due process hearing, the parties were operating under an IEP that had been executed on October 5, 1998, and was in effect until October 5, 1999.[18] In this IEP, defendant explicitly agreed to provide plaintiff's child with an air-conditioned bus and an aide to accompany her on field trips.[19] Plaintiff was asked to read that portion of the IEP into the record at the hearing:

> Q.   Let me ask you to turn [to] issue number three. Going on field trips in an air-conditioned bus as well as an adult go with her just as her IEP and federal regulations allow. Would you read from [the IEP], the last page, the additional information?
>
> A.   [The child] rides a special bus. Her bus has an aide and air conditioner due to [the child's] special health needs. If [the child's] mother can't go on field trips, some other adult will go with her.
>
> Q.   Did you ever observe that [your daughter] was not in air conditioning on the bus?
>
> A.   Yes, sir.[20]

---

[17] Defendant's brief (doc. no. 10) at 10 (citation omitted).

[18] Plaintiff's evidentiary submission (doc. no. 11) at 39.

[19] *Id.* at 43.

[20] *Id.*

14

Plaintiff then articulated each field trip her daughter had missed during the preceding school year, because defendant had failed either to provide an air-conditioned bus or an aide to accompany the child.[21] All of the missed field trips occurred despite defendant's IEP agreement to provide these services.

Therefore, plaintiff requested a due process hearing on this issue to force defendant to comply with the terms of the existing IEP. Plaintiff summarized the purpose of her request as follows:

> The fact is that the parent's request was not addressed at any of the times it was violated by the Defendant Board. The mother's testimony is clear in asserting that there were repeated field trips that her child was not allowed to attend. True enough, the IEP has already addressed the topic of field trips: It guaranteed them for the child. By the reasoning of Defendant, if the IEP promises to do what is right, it does not matter that the Defendant Board may do wrong every day of the year. The Board's defense will always be that they have agreed to do right in the IEP!
>
> . . .
>
> Perhaps no "dispute" existed for the Board because the IEP promised to do right, <u>but the parent simply wanted a hearing officer to declare that the IEP and federal law must be followed</u>. In contrast to Defendant's statement in its brief that "the school at no time opposed or rejected Pressnell's demands contained in Issue Three," it must be pointed out that at every opportunity to comply with the IEP and permit the child to go on field trips, the Defendant failed to comply with the plain language of the IEP, not to mention the federal regulations. ... It is simply not correct that the school at no time opposed or rejected Ms. Pressnell's

---

[21] *Id.* at 43-54.

request made in Issue Three as to field trips. The school rejected the request at every opportunity.[22]

The court agrees with plaintiff's arguments and concludes that a dispute existed at the time of the due process hearing regarding defendant's <u>implementation</u> of the terms of the IEP for plaintiff's daughter. Although defendant had agreed to supply plaintiff's child with an aide and air-conditioned bus, the hearing officer accepted plaintiff's testimony that "the Child missed between two (2) and four (4) of five (5) field trips last year, depending on definition and one's interpretation of the testimony."[23] Indeed, the initial arguments of counsel confirm that the parties actively disputed whether defendant had failed to provide these services in the past.[24] In sum, plaintiff sought a determination that defendant's conduct violated both her daughter's IEP and the IDEA. This qualifies as a "dispute" under any interpretation.

Defendant's second argument focuses on its belief that plaintiff did not prevail.[25] Defendant analogizes any victory plaintiff may

---

[22] Plaintiff's brief (doc. no. 12) at 2 (emphasis supplied).

[23] Plaintiff's complaint, exhibit B at 6.

[24] See text accompanying note 8, supra

[25] Both parties argue that this court should apply the "catalyst" test in determining whether plaintiff is a prevailing party. The court, however, disagrees, because plaintiff received a favorable judgment by the hearing officer. See discussion supra. The "catalyst" test is applied in the absence of "a favorable judgment on the merits or entry of a consent decree or settlement." Morris v. City of West Palm Beach, 194 F.3d 1203 (11th Cir. 1999).

have achieved regarding its past failures as procedural or *de minimis* violations, neither of which merit an award of attorneys' fees. Plaintiff contends that defendant's conduct in this case is not akin to a procedural violation and, therefore, is distinguishable. The court agrees with defendant.

The Supreme Court has held that "'the degree of the plaintiff's success' does not affect 'eligibility for a fee award.'" *Farrar*, 506 U.S. at 114, 113 S.Ct. 574 (quoting *Texas State Teachers Ass'n*, 489 U.S. at 790, 109 S.Ct. at 1492). Rather, "'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award...." *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574 (quotation omitted).

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no fee at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. ... When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, ... the only reasonable fee is usually no fee at all.

*Farrar*, 506 U.S. at 115, 113 S.Ct. at 575 (citation omitted). Many courts have refused to award attorneys' fees in the IDEA context, by characterizing plaintiff's victories as *de minimis*. *See e.g.*, *Kathleen H.*, 154 F.3d at 14-15; *Monticello School District No. 25 v. George L.*, 102 F.3d 895, 907-908 (7th Cir. 1996); *Schmidt v.*

*Special School District No. 1*, 77 F.3d 1084, 1085 (8th Cir. 1996); *Parents of Student W v. Puyallup School District*, 31 F.3d 1489, 1498 (9th Cir. 1994); *see also W.L.G. v. Houston County Board of Education*, 975 F. Supp. 1317, 1326-1327 (M.D. Ala. 1997).

Here, the hearing officer determined that "the Child missed between two (2) and four (4) of five (5) field trips last year, depending on definition and one's interpretation of the testimony."[26] The hearing officer also concluded that

> the past failures are <u>deemed either not adequately significant or clearly violative of the IDEA itself such as to require a specific remedy, whether compensatory education or otherwise</u>. However, it appears that there is at least a *prima facie* failure to comply with the actual language of the IEP by the LEA here as to the last school year.[27]

Clearly this statement evidences the hearing officer's belief that any violation of the IEP or IDEA was *de minimis*, and inadequate "to require a specific remedy, whether compensatory education or otherwise." Although this technically qualifies plaintiff as a "prevailing party," the *de minimis* nature of her success does not, in the opinion of this court, entitle her to an award of attorney fees.

---

[26] Plaintiff's complaint, exhibit B at 6.
[27] *Id.* at 7 (emphasis supplied).

## IV. CONCLUSION

Accordingly, the court finds that defendant's motion for summary judgment is due to be granted, and plaintiff's motion denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 9th day of May, 2000.

_____
United States District Judge